In re DAYTON, Minor Child.

Reed, Appellant,

v.

Dayton, Appellee.

[Cite as *In re Dayton,* 155 Ohio App.3d 407, 2003-Ohio-6397.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 03 JE 15.

Decided Nov. 28, 2003.

Corabi, Corabi & Corabi and Mary F. Corabi, for appellant.

Francesca Carinci, for appellee.

---

DeGenaro, Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Appellant James Reed appeals from the judgment of the Jefferson County Court of Common Pleas, Juvenile Division, denying his request to change the last name of his minor son. The issue we must address is whether the trial court abused its discretion in refusing to change the child's surname to that of the father.

{¶ 2} A trial court may change a child's surname only upon a showing that the name change is in the best interest of the child. The father has argued that the name should be changed because (1) it would not harm the child; (2) it would not inconvenience the child; (3) it would mean a great deal to the father; and (4) the father made attempts at supporting and visiting the child. We conclude that these factors show that a name change would not be harmful to the child; however, they do not demonstrate that a name change would be in the child's best interest. Because James failed to present the trial court with any evidence that it would be in the best interest of the child to change his last name, the trial court did not abuse its discretion by denying James's request, and the judgment of the trial court is affirmed.

## Facts

{¶ 3} James Reed and Jamie Dayton had been dating for approximately eight years when Jamie became pregnant. Throughout the pregnancy, the couple resided together. James drove Jamie to all of her doctor appointments and to the hospital to give birth on May 15, 2001. James returned the following day to visit her, at which time he signed the child's birth certificate. Jamie requested that the child be given her last name of Dayton instead of James's last name of Reed.

{¶ 4} Upon leaving the hospital, Jamie did not return home with James but instead moved in with her parents. James attempted to make child support payments to Jamie, but she sent them back. Jamie then sent a letter to the Jefferson County Child Support Enforcement Agency explaining that she did not want support from James, nor did she want him to have anything to do with the child's life. According to James, he attempted to exercise visitation with his son, but Jamie refused to allow him to see the child. Jamie contests this allegation and claims that James's contact with her and the child was very sporadic.

{¶ 5} A hearing was held on November 14, 2001, before a magistrate, where it was agreed that James would be granted parenting time. However, Jamie still

refused to change the child's last name to Reed. The magistrate concluded that there was no evidence indicating that a name change would be in the best interest of the child. James filed objections to the magistrate's opinion, which were overruled by the trial court.

### Determining Minor's Surname

{¶ 6} As his first and only assignment of error, James argues:

{¶ 7} "The judgment of the trial court was against the manifest weight of the evidence in finding that it was not in the best interest of the minor child to change the surname of said child."

{¶ 8} As a preliminary matter, it should be noted that James states in his assignment of error that the trial court's decision was against the manifest weight of the evidence. However, in the body of his brief, James shifts his argument to claiming that the trial court abused its discretion. Because abuse of discretion is the appropriate standard to be applied in this situation, we will address this assignment of error accordingly.

{¶ 9} An appellate court is not free to substitute its judgment for that of the trial court when reviewing a decision that a child's surname should be changed. *Jarrells v. Epperson* (1996), 115 Ohio App.3d 69, 71, 684 N.E.2d 718. A reviewing court should also presume that the trial court's findings are accurate, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and use these observations in weighing the credibility of the witnesses. Id. at 72, 684 N.E.2d 718. The determination of what is in the best interest of the child is within the sound discretion of the trial court, and its judgment is subject to reversal only upon a showing of an abuse of discretion. Id. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's action was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 10} Pursuant to R.C. 3111.13(C), a court of common pleas may determine the surname by which a child shall be known after the establishment of the parent and child relationship and may change a child's surname upon a showing that the name change is in the best interest of the child. *Bobo v. Jewell* (1988), 38 Ohio St.3d 330, 528 N.E.2d 180, paragraph one of the syllabus.

{¶ 11} In determining whether a change of a minor's surname is in the best interest of a child, the trial court shall consider "the effect of the change on the preservation and development of the child's relationship with each parent; the identification of the child as part of a family unit; the length of time that the child has used a surname; the preference of the child if the child is of sufficient

maturity to express a meaningful preference; whether the child's surname is different from the surname of the child's residential parent; the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; parental failure to maintain contact with and support of the child; and any other factor relevant to the child's best interest." *In re Willhite* (1999), 85 Ohio St.3d 28, 706 N.E.2d 778, paragraph two of the syllabus.

{¶ 12} In the present case, James argues that the following factors indicate that the trial court abused its discretion by not granting his request for the name change: (1) the child is only six months old; (2) the child is too young to express a preference; (3) a change in name would not have an effect on the mother's relationship with the child; (4) the child has no friends that would have referred to him as Dayton; (5) Jamie will not be inconvenienced by a name change because the child is not yet in school; (6) the name change would not affect the environment of the child; (7) the name change would cause no real convenience by having to change the child's Social Security card, health insurance, or birth certificate; (8) it is more meaningful to the father that the name be changed; and (9) James has made several attempts at supporting and spending time with the child.

{¶ 13} James argues that these factors demonstrate how a name change would be in the best interest of the child. However, the first seven factors listed by James do nothing to support a change in the surname, since they do not show why the change would be in the best interest of the child. Rather, these factors indicate that a name change would not harm the child. As for the last two factors listed by James, the Supreme Court has recently concluded that these factors are not an appropriate basis for a name change.

{¶ 14} In *In re Willhite* (1999), 85 Ohio St.3d 28, 706 N.E.2d 778, the court noted that fulfilling a child support obligation, exercising visitation rights, or invoking the custom of using paternal surnames does not constitute an adequate basis for resolving a name change controversy. The *Willhite* court wrote:

{¶ 15} "Under the [*In re*] *Newcomb* [ (1984), 15 Ohio App.3d 107, 15 OBR 198, 472 N.E.2d 1142] test, as well as tradition, a child's surname has been a sort of quid pro quo for the father's financial support. We find that this ignores the mother's parallel duty to support the child whether or not she is the residential parent. Further, it 'reinforce[s] the child-as-chattel mentality by making the child's name a piece of property to be bargained over.' * * * Indeed, it rewards the father for doing that which he is already legally, if not morally, required to do. Clearly, the notion of equating the best interest of the child with dollars is no longer reasonable in contemporary society. * * * Further, we conclude that arguing that the child of divorced parents should bear the paternal surname

based on custom is similarly objectionable." (Citations omitted.) Id. at 31, 706 N.E.2d 778.

{¶ 16} Applying the Supreme Court's rationale in *Willhite* to the present case, James failed to present any evidence that would warrant a name change, since the factors presented by James were the very ones that were disfavored by the Supreme Court in *Willhite*. In contrast, Jamie presented evidence that it would be in the child's best interest that his last name not be changed. More specifically, Jamie has always been the residential parent. She would have the closest ties to the child, since she has been his sole caregiver since birth.

{¶ 17} Accordingly, we conclude that the trial court did not abuse its discretion by failing to change the surname of the minor child. The judgment of the trial court is affirmed.

Judgment affirmed.

WAITE, P.J., concurs.

VUKOVICH, J., concurs in judgment only.