OPINION
{¶ 1} Appellant Janel McGowan Banks appeals the decision of the Harrison County Probate Court which granted appellee Timothy Hennis' motion to change the surname of the parties' four-year-old daughter from McGowan to Hennis. The first issue is whether Mr. Hennis was barred from seeking a name change based upon the doctrine of res judicata. If he was not barred, the second issue is whether the surname change was in the child's best interests. For the following reasons, we hold that the doctrine of res judicata does not bar Mr. Hennis' application. However, there was insufficient evidence in this case to find that a surname change was in the child's best interests. As such, the judgment of the trial court is reversed.
 STATEMENT OF THE CASE {¶ 2} Janel McGowan gave birth to a daughter in July 2000. Ms. McGowan was unmarried at the time, and she gave her child her own last name, McGowan. Mr. Hennis' paternity was officially established when the child was approximately three months old by way of administrative proceedings within the Harrison County Child Support Enforcement Agency. Mr. Hennis' name was added to the birth certificate, and he has been paying child support and exercising liberal parenting time ever since.
 {¶ 3} In 2002, Ms. McGowan married a Mr. Banks and changed her name. She retained her maiden name and added her married name so that her name was Janel McGowan Banks. She later gave birth to another daughter whose last name is that of her father, Banks.
 {¶ 4} Thereafter, Mr. Hennis sought shared parenting in the juvenile court. He also asked that his child's last name be changed to Hennis. A magistrate recommended denying shared parenting but granting a surname change. However, the juvenile court overruled the surname change, finding that the court lacked jurisdiction to rule on a name change in a custody action since one name change statute required action by the probate court and the other name change statute dealt with actions upon a parentage determination.
 {¶ 5} On June 2, 2004, Mr. Hennis filed the within application for his daughter's surname change in the probate court under R.C. 2717.01. A hearing was held in August 2004, and memoranda of law were submitted. Ms. McGowan Banks argued that a name change was barred by res judicata because Mr. Hennis failed to raise the issue during the administrative parentage proceedings. She alternatively argued that a name change was not in her daughter's best interests.
 {¶ 6} On September 17, 2004, the probate court granted the application and changed the child's last name to Hennis. The court stated that the child was four years old and that Mr. Hennis attempted to change the child's name when the child was three but failed in juvenile court for lack of jurisdiction. The court found that the child was not presently enrolled in school and thus a change would have a minimal effect on the child in her relationship with her peers. The court noted that people at church knew the child as McGowan but also knew that she lived in the Banks household. The probate court opined that no one in the child's household has the child's surname. The court then pointed out that Mr. Hennis expressed his own discomfort with growing up in a household where he was the only person with his last name. The court found that a name change would actually limit embarrassment and would enhance the father-daughter relationship. Finally, the court noted that Mr. Hennis is current in child support and exercises very liberal parenting time. The court concluded that the name change was in the child's best interests.
 {¶ 7} Ms. McGowan Banks filed timely notice of appeal to this court. The trial court stayed its decision pending our decision in the appeal.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 8} Ms. McGowan Banks [hereinafter appellant] sets forth two assignments of error, the first of which contends:
 {¶ 9} "Timothy Hennis is barred by res judicata from seeking the change of name of Lyndsey Elizabeth McGowan to Lyndsey Elizabeth Hennis."
 {¶ 10} The type of res judicata defense raised here is claim preclusion, which doctrine states that a final judgment rendered on the merits acts as a bar in a subsequent action for claims that arose out of the same subject matter and that were or could have been raised in the prior action between the same parties or their privies. Grava v. ParkmanTwp. (1995), 73 Ohio St.3d 379, 382. In order to determine whether a current action is barred by the doctrine of claim preclusion, the court evaluates the identity of the evidence or the nucleus of facts necessary to sustain each action. Id. at 381, 383. Where there are changed circumstances or a changed core of facts, the subsequent action is not barred. Id. at 383.
 {¶ 11} Appellant first argues that appellee should be barred from bringing his name change application because he could have sought a name change at the parentage proceedings before the Harrison County Child Support Enforcement Agency. Since he had the opportunity to have it changed at a time when the juvenile court had jurisdiction to change it, appellant believes he is barred from seeking future applications. First, we also note that it was a fairly consensual administrative parentage action rather than a judicial contest.
 {¶ 12} In any case, different facts exist now than existed at the time of the 2000 parentage action. Appellant's marriage in 2002, appellee's discovery (by way of a health insurance card) that showed appellant used her new husband's last name, and appellant's naming her new daughter Banks without any use of the name McGowan are the main facts that prompted appellee to seek a name change for his daughter. Moreover, the child had recently asked appellee questions about the last names involved, which also prompted his petition.
 {¶ 13} There are clearly changed circumstances and a changed core of facts. Thus, using the test set forth in Grava, res judicata does not bar the petition herein. Id. The prior administrative parentage action does not bar the present application. Id. See, also, Kelm v. Kelm (2001),92 Ohio St.3d 223, 227 (reasoning that the best interests of a child in disputes between parents are of higher value than finality).
 {¶ 14} Appellant also argues that appellee should be barred from bringing his name change application because the juvenile court denied his prior application and he failed to appeal that decision. Appellee responds by pointing out that the juvenile court's denial was based upon a lack of jurisdiction. He suggests that he did not appeal because he agreed that proper jurisdiction did not lie in the juvenile court during an action dealing with custody rather than parentage. See R.C. 3111.13.
 {¶ 15} Initially, we note that appellant did not present the juvenile court's judgment for the probate court's review. Nor did she even raise this argument to the probate court below. Rather, she only based her res judicata argument on the fact that appellee did not seek a name change in the administrative proceeding as addressed supra.
 {¶ 16} Regardless, a denial based upon a lack of jurisdiction of a particular common pleas court division does not bar a subsequent action in the proper division. Such denial based upon a lack of jurisdiction is not a decision on the merits of the name change claim itself. See Grava,73 Ohio St.3d at 381-382 (the final judgment must have been on the merits). In fact, by filing in probate court, appellee actually followed the juvenile court's direction. Thus, res judicata would not bar this subsequent action brought in the proper division of the common pleas court. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 17} Appellant's second assignment of error provides:
 {¶ 18} "It is in the best interests of Lyndsey Elizabeth McGowan that her name not be changed and that it remain associated with the other members of her household, and the trial court erred in ordering that her name be changed to Hennis."
 {¶ 19} Pursuant to R.C. 2717.01(B), a minor's parent can apply with the probate court for a change of name on behalf of the minor. The statute provides that the probate court may grant the application upon a showing of "reasonable and proper cause for changing the name." R.C.2717.01(A). In determining reasonable and proper cause for a child's name change under R.C. 2717.01, the court must find that the name change is in the child's best interests, just as required in the parentage statute, R.C. 3111.13(C). In re Willhite (1999), 85 Ohio St.3d 28, 32.
 {¶ 20} To determine whether a change of a child's surname is in that child's best interest, the trial court is instructed to consider the following factors: the effect of the change on the preservation and development of the child's relationship with each parent; the identification of the child as part of a family unit; the length of time that the child has used a surname; the preference of the child if the child is of sufficient maturity to express a meaningful preference; whether the child's surname is different from the surname of the child's residential parent; the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; parental failure to maintain contact with and support of the child; and any other factor relevant to the child's best interest. Id., citing Bobo v. Jewell (1988), 38 Ohio St.3d 330, 528 N.E.2d 180, paragraph two of the syllabus.
 {¶ 21} The Supreme Court also stated that the outdated tradition of granting of the paternal surname to a child is not to be considered as a factor. Id. at 30, 32. Additionally, a parent is not entitled to a choice of the child's surname as a reward for paying child support. Id. at 31-32. The Court noted the desire to avoid the "confusion so prevalent with having a mother and child in the same household with two different surnames." Id. at 33. After making these holdings in Willhite, the Supreme Court reversed and remanded the lower court's denial of the custodial mother's application to change the child's last name where the mother reverted to her maiden name after divorce and wished the child's last name to be a hyphenated version of her maiden name and the father's last name. Id.
 {¶ 22} In another case, the Supreme Court determined that the trial court erred in granting a non-custodial father's application to change his non-marital son's last name. Bobo, 38 Ohio St.3d 330. The Court concluded "that the mother is the custodial parent, that the child has been known by the mother's surname, and that no evidence in the record supports the conclusion that the change in name is in the best interest of the child." Id. at 335.
 {¶ 23} This court has also reversed a trial court's name change in a case where the parents were never married. Bender v. Lottman (June 8, 1990), 7th Dist. No. 88-C-43. We emphasized that the mother was the custodial parent and the child had only been known by the mother's surname. Id. We also noted that the Supreme Court reversed Bobo for a child under six months old, but in Bender the child went by the mother's name for three years. Id. Other courts have also reversed where the trial court granted a non-custodial father's name change request. See, e.g.Donna B. v. Kraig M. (Oct. 23, 1998), 6th Dist. No. WM-98-010; Erin C.v. Christopher R. (1998), 129 Ohio App.3d 290 (6th Dist.); In reStollings (1989), 65 Ohio App.3d 183 (3d Dist.).
 {¶ 24} More recently, this court upheld a trial court's decision refusing a father's request to change his child's surname. In re Dayton,155 Ohio App.3d 407, 2003-Ohio-639. In that case, the child was six months old at the time the name change hearing was held. We noted that the trial court occupied the best position to view the witnesses and their demeanor on the stand. Id. at ¶ 9. We then found that the trial court did not abuse its discretion in denying the name change, noting that the mother has always been the residential parent and would have the closest ties to the child. Id. at ¶ 16-17.
 {¶ 25} With this background in mind, we now apply the relevant factors to this case. The mother here married and changed her name to include both her maiden name and her new married name. The father noted that he grew up embarrassed with his mother's maiden name, which was different than the last name of his mother and siblings. (Tr. 14-15). However, his mother did not maintain her maiden name as part of her new name. Thus, his situation is not wholly comparable to his child's.
 {¶ 26} The father testified that the child expressed confusion one day over why her name was different than his name. (Tr. 13). He also noted that he attempted to receive shared parenting rights last year and that he exercises visitation which is substantially more than standard guideline visitation. (Tr. 12). He notes although he has a different last name than his father, his mother and his siblings, he shares his last name with his wife, his grandparents, and his aunts and uncles. (Tr. 19). Thus, he concluded the child would identify with his household where she spends a great deal of time during his liberal parenting time. It is noted that this expanded visitation was voluntarily granted by the mother rather than the product of court order.
 {¶ 27} The father testified that the child's friends all share their father's last names. However, as the Supreme Court stated, traditional paternal naming is not a valid consideration. Willhite, 85 Ohio St.3d at 30,32.
 {¶ 28} The probate court opined that the mother no longer has the child's last name. Yet, the mother's last name still contains the child's last name. By changing her name, the child will no longer have the name that is still a part of the name of her custodial parent. The mother is the custodial parent. Appellee is not the custodial parent, and his shared parenting petition was denied. The name of the custodial parent is described as a very important consideration. Id. at 32, 33. It is preferable to avoid changing a name the child shares with the residential parent. Id. In emphasizing the importance of sharing even one last name with the custodial parent, the Supreme Court reversed a court's denial of a mother's name change petition in Wilhite, where the mother changed back to her maiden name and wished the child's surname to be changed to a hyphenated name containing both the mother's newly reverted maiden name and the father's name which the child already carried.
 {¶ 29} It is true that the child's younger half-sister does not share her last name. Yet, the child has had the McGowan name for four years. The Supreme Court reversed a name change in Bobo where the child was only an infant with no concept of its name. Here, the child is four years old, has been saying her name for some time, and has learned to write her name.
 {¶ 30} The probate court stated that the child was not currently enrolled in school. However, it was summer. The child had attended preschool that past year and would again attend preschool the coming school year. (Tr. 4-5). Although her mother was not certain if she would attend the same preschool as last year, there was a possibility that she would attend that same school. Either way, she could encounter classmates who know her as McGowan. She has other friends who know her as McGowan. Her fellow church members know her as McGowan. (Tr. 9). She shares this name with other members of her mother's family. (Tr. 8). The mother opined that it would be too confusing to the child and to the public to change the child's name at this point. (Tr. 27).
 {¶ 31} The child's relationship with her father already seems strong; there does not appear to be a need to strengthen a loose bond with a name change. The court found that the embarrassment and discomfort would be lessened by a name change because others would think the parents were just divorced rather than unmarried. However, that is not the main consideration when speaking of the embarrassment factor; the embarrassment factor deals with the discomfort from having a namedifferent from the residential parent's name. Willhite,85 Ohio St.3d at 32. As aforementioned, the probate court believed that the child already had a name different than the residential parent's name; however, this is not wholly true. Moreover, many mothers revert to their maiden name upon divorce, and the Supreme Court prefers children to share a name with their residential parent. Id. Finally, one should not perpetuate the discrimination against mothers or against non-marital children by imposing different naming standards upon them.
 {¶ 32} A mother with a child from a prior relationship should not fear having her child's name changed merely because she gets married and adds her new husband's name to her own maiden name that she shares with the child. She did not just drop McGowan; she maintained it for her daughter. Under the probate court's decision, mothers remarrying must keep the name they share with their children with no additions for the new husband even though this could entail the mother having a different last name than a subsequent child.
 {¶ 33} The probate court inquired as to why the mother did not give her second child a double last name like herself so that both children would share McGowan in their names. But, the name of one's second child should not affect the maintenance of one's first child's given and established name.
 {¶ 34} Appellant himself testified to the discomfort he experienced growing up with a name different than his mother. However, by changing the child's last name to Hennis, the child will be the only member of her residential parent's household with that last name. Moreover, the child never had the last name of her father anytime in her life. Therefore, the argument of appellant on this point is not only unpersuasive, it is self-defeating. In contrast, the child does share a name with her mother, who is her residential parent. The child knows her last name and is known by her last name.
 {¶ 35} While the probate court gave several reasons why a name change would not be harmful to the child, this is not the same as finding that a name change is in the best interest of a child. Accordingly, we determine that the surname change is based upon insufficient evidence to find that it is in the child's best interests. The judgment of the trial court is hereby reversed.
Donofrio, P.J., concurs.
Waite, J., concurs.