D.W., APPELLEE, *v.* T.L., APPELLANT.

[Cite as *D.W. v. T.L.,* 134 Ohio St.3d 515, 2012-Ohio-5743.]

*Children—Name change—Minor child of unmarried parents—Best interest of child—Father's interest in having child bear paternal surname should not be given greater weight than mother's interest in having child bear maternal surname—Guidelines to be considered in determining best interest of child—Gender-based stereotypes may not be basis for ordering name change.*

(No. 2011-1979—Submitted September 25, 2012, at the Case Western Reserve University Session—Decided December 6, 2012.)

APPEAL from the Court of Appeals for Clinton County, No. CA2011-03-004, 2011-Ohio-5228.

_____

CUPP, J.

{¶ 1} This appeal concerns a trial court's decision granting a request to change the surname of a child, who was born to unmarried parents, from the surname of the mother as listed on the birth certificate to the surname of the father, over the mother's objections. For the reasons that follow, we determine that the decision to change the child's surname was not supported by sufficient evidence as a matter of law. Therefore, we reverse the judgment of the court of appeals and remand this cause to the trial court for entry of final judgment in favor of the appellant mother.

**I. Facts and Procedural History**

{¶ 2} L.D.W.L. was born to his mother, T.L. (the appellant) and father, D.W. (the appellee), an unmarried couple, in June 2005. After the child's birth, the parents discussed the matter of naming the child in detail, and they ultimately

agreed to have the child bear his mother's surname. As a part of this agreement, the couple decided to give the child two middle names, making the child's second and third names the same as his father's first and last names. Although the child's surname was apparently a contentious issue between the parents, they both signed the birth certificate, which listed the child's full name, prior to the child's leaving the hospital.

{¶ 3} The child initially lived with his mother and half-sister in Cincinnati, while his father lived in Wilmington, Ohio. When the child was 18 months old, his mother purchased a home and his father moved in with the family. In April 2007, the father joined the military in order to better meet the needs of the household. He attended basic training and was deployed overseas for a time.[1] Subsequently, he was stationed in Columbus, Ohio, and commuted to be with the family about three days a week. Then, in August 2009, the parents ended their relationship. On September 28, 2009, the father filed in the Juvenile Division of the Clinton County Court of Common Pleas a "complaint to determine paternity and establish parental rights and responsibilities" involving the child.

{¶ 4} The parents eventually reached agreement on issues pertaining to paternity, the parenting plan, child support, and other parental rights and responsibilities. In particular, the father agreed that the mother should have sole legal and residential custody of the child with the father having visitation every other weekend and one day a week. The only issue remaining for determination was the father's request to change the child's surname to match the father's surname. Consequently, a magistrate held an oral hearing on the name-change question at which both the mother and father testified. The parties presented no other testimony, and the only documentary evidence submitted was a copy of the child's birth certificate.

---

1. The record in this case does not indicate the specific date of the father's overseas deployment or the length of time he was deployed.

**{¶ 5}** Testimony at the hearing established that the child, then five years old and in preschool, had since his birth been referred to by his given name and his surname, and he had always lived with his mother and his half-sister, both of whom shared his last name. The father was actively involved in the child's life and provided financial support for his care. The mother acknowledged that she wanted the child to continue to have a good relationship with his father.

**{¶ 6}** The father testified regarding his reasons for pursuing the change of his child's surname. These reasons included wanting his son to have the same last name as his own, wanting his son to "have something of mine" while the father was deployed, and wanting his son to carry on the father's legacy through his surname should the father be killed in combat. The father opined that a change of his son's surname would not have a harmful effect on the child and that changing the child's name would "be meaningful" to both of them.

**{¶ 7}** The mother testified regarding her reasons for wanting the child's surname to remain the same. She stressed that the father's full name was already contained within the child's full name and that the child, who had developmental delays and was on an individualized education program, did not adjust well to change. The mother further testified that the child knew his last name (which was the same as his half-sister's surname), that the child was working on learning to write his existing last name, and that the child lived in the same household with the mother and half-sister. She believed that it would be detrimental for the child to start over and learn a new surname that would be different from the mother's and half-sister's surname, especially in view of the child's significant developmental disabilities.

**{¶ 8}** The magistrate orally ruled in favor of the father's request at the conclusion of the hearing and ordered that the child's surname be changed to the same as the father's last name. The magistrate later signed an order stating that the name change "would be in the minor child's best interest." The mother filed

objections to the magistrate's ruling. However, the juvenile-court judge overruled the objections, agreed with the magistrate that the child's surname should be changed, and ordered that the birth certificate be changed to reflect the new name. Upon appeal, the Twelfth District Court of Appeals held that the trial court did not abuse its discretion and affirmed. *D.W. v. T.L.*, 12th Dist. No. CA2011-03-004, 2011-Ohio-5228.

**{¶ 9}** We accepted the mother's appeal under our discretionary jurisdiction for review of two propositions of law, which assert that the trial court's decision was improperly based on "discriminatory tradition and gender-based assumptions" and that the trial court failed to properly follow this court's precedents regarding the standards for deciding whether the change of a child's name is in the child's best interest.

## II. Analysis

**{¶ 10}** When reviewing a trial court's decision determining that a child's name either should or should not be changed, a reviewing court may not substitute its own judgment for that of the trial court, but it must consider whether the trial court abused its discretion. *See Jarrells v. Epperson*, 115 Ohio App.3d 69, 71, 684 N.E.2d 718 (3d Dist.1996); *In re Dayton*, 155 Ohio App.3d 407, 2003-Ohio-6397, 801 N.E.2d 531, ¶ 9 (7th Dist.). When there is insufficient evidence as a matter of law that a name change is in the best interest of the child, a trial court's judgment changing a child's surname must be reversed. *Bobo v. Jewell,* 38 Ohio St.3d 330, 335, 528 N.E.2d 180 (1988); *see In re Wolfe*, 2d Dist. No. 19136, 2002-Ohio-3277, ¶ 11 (a trial court abuses its discretion when it orders a surname change upon insufficient evidence that the change is in the child's best interest).

**{¶ 11}** Our consideration of the trial court's ruling is framed by two of our precedents: *Bobo* and *In re Willhite*, 85 Ohio St.3d 28, 706 N.E.2d 778 (1999).

**{¶ 12}** "Pursuant to R.C. 3111.13(C), a court of common pleas may determine the surname by which the child shall be known after establishment of

the existence of the parent and child relationship, and a showing that the name determination is in the best interest of the child." *Bobo*, at paragraph one of the syllabus. The appellate court in this case applied the first part of this holding from *Bobo* to determine that the juvenile court had statutory authority to consider the name change. The appellate court's conclusion on that issue has not been appealed and is not at issue before us.

{¶ 13} In *Bobo*, we held:

> In determining the best interest of the child concerning the surname to be used when parents who have never been married contest a surname, the court should consider: the length of time that the child has used a surname, the effect of a name change on the father-child relationship and on the mother-child relationship, the identification of the child as part of a family unit, the embarrassment, discomfort or inconvenience that may result when a child bears a surname different from the custodial parent's, the preference of the child if the child is of an age and maturity to express a meaningful preference and any other factor relevant to the child's best interest. Courts should consider only those factors present in the particular circumstances of each case.

*Bobo*, 38 Ohio St.3d 330, 528 N.E.2d 180, at paragraph two of the syllabus.

{¶ 14} We cautioned in *Bobo,* at 334, that courts in unmarried-parent situations should not give greater weight to a "father's interest in having the child bear the paternal surname," because this preference fails to consider that the mother in this situation has "at least an equal interest in having the child bear the maternal surname" and therefore is inherently discriminatory.

**{¶ 15}** In the case of *In re Willhite*, 85 Ohio St.3d 28, 706 N.E.2d 778, at paragraph one of the syllabus, we held that "[w]hen deciding whether to permit a name change for a minor child pursuant to R.C. 2717.01(A), the trial court must consider the best interest of the child in determining whether reasonable and proper cause has been established."

**{¶ 16}** In *Willhite*, at paragraph two of the syllabus, we reiterated the basic factors set forth in *Bobo* applicable to a trial court's consideration of whether to change a child's surname and added two other specific factors: "whether the child's surname is different from the surname of the child's residential parent" and "parental failure to maintain contact with and support of the child." We explained that in contemporary society, a preference that a child bear the father's surname as "a sort of quid pro quo for the father's financial support" is improper because this preference ignores the mother's parallel duty to support the child and focuses too narrowly on the father. *Id.* at 31. We further reinforced and strengthened the warning expressed in *Bobo* that trial courts should not commit the mistake of focusing the best-interest inquiry on the father's interest in having the child bear his surname, reiterating that this approach is fundamentally discriminatory. *Id.* at 31-32. Finally, as relevant here, we took special note of the confusion that frequently occurs when a mother and child in the same household bear different surnames. *Id.* at 33.

**{¶ 17}** Although *Bobo* and *Willhite* arose in differing contexts, they set out general guidelines that apply in any name-change determination involving a minor child. *See Willhite* at 32 (applying the "same rationale" to both a name-change action in probate court pursuant to R.C. 2717.01 and a name change in a juvenile-court paternity action pursuant to R.C. 3111.13(C)). Taken together, those two decisions require that a parent (in this case the father) who seeks to alter the status quo by changing the child's surname bears the burden of presenting sufficient evidence to affirmatively demonstrate that the change is in the child's

6

best interest. *See Willhite* at paragraph one of the syllabus ("reasonable and proper cause" must be established for the name change to be permitted); *In re Change of Name of Halliday*, 11th Dist. No. 2005-G-2629, 2006-Ohio-2646, ¶ 18 (burden is on the party who seeks the name change to establish that the change is in the child's best interest).

**{¶ 18}** Some of the factors set forth in *Bobo* and *Willhite* are not relevant to the situation here. As to those factors that are relevant, and the other factors taken into account by the magistrate and the trial judge, the evidence presented did not tip the balance one way or the other. However, with our case precedents in mind, a review of the full record in light of the considerations enumerated in *Bobo* and *Willhite* compels us to conclude that the decision to change the child's surname was not supported by sufficient evidence probative of the child's best interest, and the decision must be reversed.

**{¶ 19}** On this record, we must agree with the contention of the mother that the general import of the father's testimony was that the change of name should be granted on the basis of the father's own wishes and interests and not, as the law requires, on the best interests of the child. The father's testimony is replete with references to his own worries, wants, fears, preferences, beliefs, etc., including testimony of his own past experience growing up without a father figure. The father's testimony is exemplified by the statement that it was "huge" to the father that his son should bear his surname. Although we do not disagree that these concerns and considerations are of great significance to the father regarding his son, the father offered minimal support for his opinion that the name change would not be harmful to the child, and even the reasons that were offered did not bear upon the more relevant issue of whether the name change would affirmatively be in the child's best interest.

**{¶ 20}** In contrast, the mother's testimony provided specific reasons why the name change would likely be detrimental to the best interest of the child,

including that the child's developmental disabilities and his inability to adapt to change would make it very difficult for him to accept the new surname. The concern raised by the mother that, if changed, the child's surname would be different from that of the others in the residential household was specifically recognized in *Willhite* as a prominent factor for consideration by a trial court. *See* 85 Ohio St.3d at 32, 706 N.E.2d 778; *In re Application for Change of Name of McGowan*, 7th Dist. No. 04 HA 572, 2005-Ohio-2938, ¶ 28 (noting that *Willhite* recognized the "important consideration" that it is preferable to avoid changing a name that a child shares with the residential parent); *Wolfe*, 2002-Ohio-3277, at ¶ 16 (finding error in a trial court's failure to consider, as a factor that "clearly favored" the child continuing to bear the mother's surname, that the mother was the residential parent).

{¶ 21} Moreover, based on the record that is before us, the mother's position that the trial court's decision was, at least in part, based on gender-based traditions and assumptions, contrary to this court's cautionary warnings in *Bobo* and *Willhite*, has merit. One of the reasons given by the trial court supporting the decision to allow the name change was that if either parent marries, "[t]he father is far less likely to change his surname" than the mother. We recognize that the trial court's comment that a woman who marries "often takes her spouse's surname" is not an inaccurate observation. However, this generic consideration— that a woman is more likely to change her surname if she should marry—cannot be a valid factor supporting a name change in a specific case like the one before us, and it runs counter to the explicit directives of *Bobo* and *Willhite*. *See McGowan*, 2005-Ohio-2938, at ¶ 31 (it is improper to "perpetuate the discrimination against mothers or against non-marital children by imposing different naming standards upon them").

### III. Conclusion

{¶ 22} In summary, the trial court in this case placed too much emphasis on the father's interest in having the child bear the paternal surname and did not confine its consideration to the best interest of the child. *See Bobo*, 38 Ohio St.3d at 334, 528 N.E.2d 180; *Willhite*, 85 Ohio St.3d at 32, 706 N.E.2d 778. Furthermore, the trial court's decision at least in part was improperly founded on gender-based conventions and stereotypes. *See Bobo* at 334; *Willhite* at 32. In this situation, where insufficient evidence supported the name change, the trial court's judgment was erroneous as a matter of law. *Bobo* at 335.

{¶ 23} We therefore reverse the judgment of the court of appeals and remand this cause to the trial court to enter final judgment denying the name-change request.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, and MCGEE BROWN, JJ., concur.

_____

Whitaker & Shade, L.L.C., and Neal W. Duiker, for appellee.

Ginger S. Bock Law Office, Inc., and Ginger S. Bock, for appellant.

_____