[Cite as *In re Name Change of C.L.F.*, 2022-Ohio-2300.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In re: The Name Change of: | : | |
| [C.L.F., | : | No. 21AP-619 (Prob. No. 601338) |
| J.M.S., | : | (REGULAR CALENDAR) |
| Appellant]. | : | |

D E C I S I O N

Rendered on June 30, 2022

**On brief:** *Anthony W. Greco,* and *John C. Rozmus,* for appellant. **Argued:** *Anthony W. Greco.*

APPEAL from the Franklin County Court of Common Pleas,
Probate Division

NELSON, J.

{¶ 1} It may be possible to purchase naming rights to a sports stadium. Or to an auditorium, or a park bench. But the Supreme Court of Ohio has made it clear that in this day and age, judicial determinations regarding proposed name changes for children are not to be governed by financial transactions. "[T]he notion of equating the best interest of the child with dollars is no longer reasonable in contemporary society." *In re Willhite*, 85 Ohio St.3d 28, 31 (1999). To suggest otherwise " 'reinforces the child-as-chattel mentality by making the child's name a piece of property to be bargained over.' " *Id.*, quoting Seng, *Note: Like Father, Like Child: The Rights of Parents in their Children's Surnames*, 70 Va.L.Rev. 1303, 1333-34 (1984).

{¶ 2} We are presented here with a strenuous argument that "the probate court should have enforced [a] * * * prior agreement and changed [a] child's surname" by eliminating the mother's in preference to the father's; after all, "Appellant-Father [had] provided a check for $10,000 to Appellee-Mother for purposes of satisfying his obligation

under" the deal. *See* Appellant's Brief at 3, 9-10. But the fact that parents have exchanged cash on the barrelhead does not relieve judges of what the Supreme Court has said is the trial court's obligation "[w]hen deciding whether to permit a name change for a minor child * * * [to] consider the best interest of the [non-contracting] child in determining whether reasonable and proper cause has been established" for the change pursuant to the standard now found in R.C. 2717.09. *Willhite* at paragraph one of the syllabus (in reference to same "reasonable and proper cause" standard in previous iteration of Ohio name change statute). No longer is the child's surname "a sort of quid pro quo for the father's financial support," *id.* at 31, and as it is not property "to be bargained over," a trial court does not err by looking to the best interest of the child rather than enforcing such a bargain. *See id.*

{¶ 3} C.L.F. is a child born in 2017 to mother A.M.F. ("Dr. A.F.") and father J.M.S. ("Mr. M.S."). From the time he left the hospital after birth, C.L.F. has shared his mother's surname. His parents are not married to each other, but pursuant to a shared parenting agreement, he lives about half the time with each, and both are designated residential parents. On November 20, 2019, Mr. M.S. applied to the probate court for a judicial order either stripping C.L.F. of his mother's last name and replacing it with his, "or in the alternative" adopting a hyphenated last name using the surnames of both parents. November 20, 2019 Application for Change of Name of Minor at 1. Dr. A.F. opposed the application. *See*, *e.g.*, August 26, 2020 Tr. at 20.

{¶ 4} A magistrate conducted a lengthy hearing at which she heard from both parents. Looking to the best interest of the child pursuant to Supreme Court precedent, she recommended accommodating Mr. M.S.'s request by adopting his proposed latter option of changing the name of the child from C.L.F. to C.L.S.-F. May 3, 2021 Magistrate's Decision at 7. Mr. M.S. nonetheless objected to the magistrate's decision. May 17, 2021 Applicant-Father's Objections. After "thorough[] review[]" including further application of the Supreme Court's familiar *Willhite* analysis, the probate court overruled Mr. M.S.'s objections, adopted the magistrate's decision, and granted Mr. M.S.'s "alternative request" by ordering that the child's name be changed to C.L.S.-F. September 21, 2021 Judgment Entry at 1, 6.

{¶ 5} The magistrate found, among other things, that C.L.F. was born on October 6, 2017 and lived with both his parents for roughly the first 20 months of his life. Magistrate's

Decision at 2. He now splits his time with them under the joint shared parenting agreement, which designates both "as residential parents." Mr. M.S. "believes [C.'s] current last name [F.] damages [C.'s] connection to Mr. [M.S.'s] family," while Dr. A.F. "believes that if [C.] had the last name '[S.],' it would have a detrimental effect on her relationship with [C.]." The magistrate noted that "[i]f [C.'s] name is changed, Dr. [A.F.] would prefer '[F.-S.]' to '[S.-F.].' " *Id.* at 3.

{¶ 6} The magistrate further recited that (separate, we note, from the later shared parenting agreement as filed in domestic relations court on August 15, 2019 and incorporated into the September 16, 2019 Final Shared Parenting Decree there), "Dr. [A.F.] and Mr. [M.S.] reached an agreement to change [C.'s] last name to '[S.]' as part of a global settlement on a number of issues. Dr. [A.F.] testified [consistent, we see, with the representations of Mr. M.S.'s counsel, *see* Tr. at 13] that the agreement was entered into during a brief period when she and Mr. [M.S.] had reconciled. As part of this settlement, Mr. [M.S.] paid Dr. [A.F.] $10,000 for [C.'s] medical and educational expenses." *Id.* at 3. "On May 28, 2019, Mr. [M.S.] and Dr. [A.F.] submitted an agreed entry to change [C.'s] name to ['C.L.S.'] to the Franklin County Court of Common Pleas, Domestic Relations and Juvenile Division * * *. The judge hearing the matter [there] dismissed the entry for lack of subject matter jurisdiction." *Id.* at 3-4. And the agreement between the parents as to a name change disintegrated with their relationship. *See*, *e.g.*, August 26, 2020 Trial Statement of Mother Dr. A.F. (opposing any name change for C. and asserting at page 3 that "Mr. [M.S.] ended the romantic relationship and kicked [Dr. A.F.] and her eight year old daughter out the day after [Dr. A.F.] signed the parenting agreement. * * * [Dr. A.F.] now realizes her optimism relating to Mr. [M.S.] was wrong"); August 25, 2020 Applicant-Father's Trial Brief at 3 (in 2019, before Mr. M.S. filed the name change application in probate court, Dr. A.F. "refused to honor the parties' [sic] agreement and refused to agree to the name change").

{¶ 7} Citing *Willhite* at paragraph one of the syllabus, the magistrate recognized that her obligation was to consider the best interest of the child in determining whether to grant a name change as requested for a minor, and she then correctly stated the factors that *Willhite* establishes as the framework for evaluating that question:

> a. The effect of the change on the preservation and development of the child's relationship with each parent;

> b. The identification of the child as part of a family unit;
>
> c. The length of time that the child has used a surname;
>
> d. The preference of the child if the child is of sufficient maturity to express a meaningful preference;
>
> e. Whether the child's surname is different from the surname of the child's residential parent;
>
> f. The embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's;
>
> g. Parental failure to maintain contact with and support of the child; and
>
> h. Any other factor relevant to the child's best interest.

Magistrate's Decision at 4-5; *see also Willhite* at paragraph two of the syllabus (citations omitted).

{¶ 8} "The *Willhite* court indicated a preference toward[] granting minor [children] name changes when the proposed name change is a hyphenation of both parents' names," the magistrate observed. Magistrate's Decision at 5, citing *Willhite* at 33. The magistrate also recognized that *Willhite* "condemned [a court's] deciding a child's name based on financial contributions." *Id.*, citing *Willhite* at 31. Observing *Willhite*, the magistrate reiterated that "[c]hildren are not chattel" and that "child support should not be seen as consideration for the child to have the father's surname." *Id.* at 6 (rejecting Mr. M.S.'s contract-based argument and looking to the best interest of the child).

{¶ 9} The child "has gone by the last name '[F.]' his entire life," the magistrate pointed out. *Id.* At less than three years of age, the lad "was not sufficiently mature to express a meaningful preference" as to his surname. *Id.* Both parents are residential parents, and neither has "failed to maintain contact or support with [C.]"; he "recognizes Dr. [A.F.] and Mr. [M.S.] as his parents," and "[a] hyphenated name would not sever his connection to Dr. [A.F.] or any member of her family, but would increase his connection to Mr. [M.S.] and his family." *Id.*

{¶ 10} The "cumulative weight" of the *Willhite* factors convinced the magistrate that a hyphenated last name would be in the child's best interest: "A dual name would encourage [his] affiliation with both parents, especially important in this instance because [he] spends equal time with both Dr. [A.F.] and Mr. [M.S.], and both are residential parents." *Id.* at 7. Although Dr. A.F. would have preferred that her last name go first if the surname was to be hyphenated, the magistrate settled upon "S.-F." because no formal application for "F.-S." had been made (while Mr. M.S.'s application had included the S.-F. alternative). *Id.*

{¶ 11} Mr. M.S. objected to the magistrate's decision on various grounds, including issues relating to what he contended was "a valid and enforceable contract" to change the boy's surname to his alone. May 17, 2021 Applicant-Father's Objections to Magistrate's Decision at 2-3 (also noting that he was the "school placement parent" under the shared parenting plan, urging that the magistrate should have considered Dr. A.F.'s contemplation of a move out of Ohio, and disputing the magistrate's best interest determination). The trial court undertook what it noted was an independent review of those matters. Judgment Entry at 1.

{¶ 12} The trial court correctly understood that someone applying to a court for a name change must show "reasonable and proper cause" for the change. Judgment Entry at 2, citing R.C. 2717.09. "When deciding whether to permit a name change for a minor child * * *, the trial court must consider the best interest of the child in determining whether [a] reasonable and proper cause has been established." *Willhite* at paragraph one of the syllabus (in reference to same formulation in previous iteration of Ohio name change statute); *compare* Judgment Entry at 3 (echoing *Willhite* "best interest" teaching and reciting the *Willhite* factors).

{¶ 13} After correcting certain tangential inaccuracies in the magistrate's decision and adopting the magistrate's otherwise unobjected to findings of fact, the trial court turned to the requisite best interest analysis. Judgment Entry at 4. The trial court correctly noted that: "any *past* agreements between the minor's parents regarding the appropriateness of a proposed name change do not abrogate the affirmative duty of the applicant to establish that the name change is [currently] in the minor's best interests." *Id.* at 4 (emphasis added), citing *D.W. v. T.L.*, 134 Ohio St.3d 515, 2012-Ohio-5743, and *Willhite*. The trial court found the magistrate's application of the *Willhite* factors "sound,"

and agreed that changing the child's surname to "S.-F.," thus incorporating the father's surname into the child's, "would be in the minor's best interest." Judgment Entry at 5. The shared parenting plan named *both* parents as C.'s residential parents, the trial court noted, and notwithstanding speculation over possible moves, " '[t]he child with a combined surname does not have to explain why his or her last name is different.' " *Id.* at 6 (quoting *Willhite* preference for hyphenated surname in these circumstances).

{¶ 14} Moreover, the trial court explained, Mr. M.S. himself had proposed the hyphenated surname (with his surname coming first, as the magistrate then recommended) as an alternative to using the father's surname alone:  "At hearing, Mr. [M.S.'s] counsel confirmed that Mr. [M.S.] was not withdrawing his alternative request." *Id.* at 6. The trial court adopted the magistrate's recommendation after finding "[u]pon thorough review of all the evidence, [that] Mr. [M.S.] has successfully established that having the '[S.-F.]' surname rather than [the] current '[F.]' surname would be in the minor's best interest, but has failed to meet that burden for a change to '[S.]' alone." *Id.*

{¶ 15} Appealing from that determination in favor of his alternative proposal, Mr. M.S. posits five assignments of error:

> [I.] The probate court erred and abused its discretion to the material prejudice of Appellant by failing to find and consider that the parents agreed in writing that changing the minor child's name to [C.L.S.] was in the minor child's best interest, and by failing to accord special weight to the parents' assessment and prior agreement.
>
> [II.] The probate court erred and abused its discretion to the material prejudice of Appellant by failing to enforce the parties' agreement to change the minor child's surname to [S.], and by failing to enforce the parties' Agreed Entry [sic] for Name Change.
>
> [III.] The probate court erred and abused its discretion to the material prejudice of Appellant by not admitting Appellant's Exhibit 7 into evidence.
>
> [IV.] The probate court erred and abused its discretion to the material prejudice of Appellant by not admitting Appellant's Exhibit 40 into evidence.
>
> [V.] The probate court's decision was against the manifest weight of the evidence, and the probate court erred and

> abused its discretion to the material prejudice of Appellant by deciding that changing the minor child's surname to [S.-F.] rather than [S.] was in the child's best interest.

Appellant's Brief at vii.

{¶ 16} Ohio statute "vests discretion with the trial court to determine whether to grant a name change application. On appeal, our role is * * * to determine whether the trial court's application of the law to the facts presented amounted to an abuse of discretion." *In re Name Change of Perez*, 10th Dist. No. 04AP-126, 2004-Ohio-5068, ¶ 13 (citations omitted) (adding that " 'abuse of discretion' * * * implies that the court's attitude is unreasonable, arbitrary [including, we add, not being in accordance with law], or unconscionable"). Thus, the Supreme Court has reminded us, "[w]hen reviewing a trial court's decision determining that a child's name either should or should not be changed, a reviewing court may not substitute its own judgment for that of the trial court, but it must consider whether the trial court abused its discretion." *D.W*, 2012-Ohio-5743, at ¶ 10. In reviewing a trial court's disposition of objections to a magistrate's report, we will accept the trial court's factual determinations if supported by some competent, credible evidence. *See Beasley v. ANG, Inc.*, 10th Dist. No. 12AP-1050, 2013-Ohio-4882, ¶ 6, citing *O'Connor v. O'Connor*, 10th Dist. No. 07AP-248, 2008-Ohio-2276, ¶ 16 (further citation omitted).

{¶ 17} Together, the first, second, and fifth assignments of error urge that the trial court erred in failing to "consider," give "special weight to," and "enforce," the parents' fleeting agreement on the name, and in adopting Mr. M.S.'s proposed hyphenated alternative as in the child's best interest. Those assignments are closely interrelated, and we consider them together.

{¶ 18} Mr. M.S.'s lawyer condensed his argument in his opening statement to the magistrate. In a nutshell, Mr. M.S.'s position has been that:

> [T]he terms of [the parents'] agreement [made in mid-2019 while they were temporarily reconciled] were very simple. Mom needed money from dad. Dad says, How much do you need for the last name to be [S.]?
>
> She says, $10,000. He writes a check that day for $10,000 to the good doctor. The good doctor that day sends an e-mail to her family law attorney and sets forth the terms of the parties['] settlement, which includes changing the last name of [the child] to [S.].

Tr. at 13 (counsel for Mr. M.S.); *see also*, *e.g.*, *id.* at 44 (counsel for Mr. M.S.: "This 10,000 is to settle the name change issue").

{¶ 19} And that was the position to which Mr. M.S. testified at trial. "This $10,000 was for changing the last name of [the child] to [S.]," he averred. *Id.* at 47; *compare id.* at 18-19 (lawyer for Dr. A.F., in course of noting that proceeding is to consider name change application and not a motion to enforce a settlement agreement, characterizes payment transaction as a "multifaceted attempted resolution" of various issues including share of maternity hospital bills).

{¶ 20} Mr. M.S.'s "but we had a cash deal" argument fails most notably because the Supreme Court has told us it does, in no uncertain terms. Courts no longer award name changes as "a sort of quid pro quo for the father's financial support." *Willhite* at 31. A child is an independent being, and his or her name is not " 'a piece of property to be bargained over.' " *Id.* The Supreme Court could not be more clear that the sort of quid pro quo on which Mr. M.S.'s argument rests—"[t]his $10,000 was for changing the last name"—does not obviate the responsibility of a court asked by a parent to change a child's name to assess the best interest of the child: "the trial court must consider the best interest of the child in determining whether reasonable and proper cause has been established." *Id.* at paragraph one of the syllabus.

{¶ 21} Neither young C. nor the trial court was party to any agreement stripping the child of the only last name he has known by replacing the surname he shares with his mother and substituting his father's as his exclusive surname. *See* Tr. at 50 (father concedes, "I think he knows the name [C.L.F.]"). With the "child-as-chattel mentality" now a relic of the past, *Willhite* at 31, the trial court was not bound in 2021 to "enforce" the parents' 2019 agreement by removing C.'s last name: With C. not of an age to make the decision for himself, the trial court was obliged to look out for his best interest. *See also*, *e.g.*, *D.W.*, 2012-Ohio-5743, at ¶ 17 (advocate of name change bears burden of showing that change is in child's best interest); *Bond v. de Rinaldis*, 10th Dist. No. 15AP-646, 2016-Ohio-3342, ¶ 17 (same, citing *D.W.* in listing factors to weigh); *In re Hoke*, 10th Dist. No. 02AP-1159, 2003-Ohio-2329, ¶ 7 (best interest standard); *In re C.M.M.*, 5th Dist. No. 16CA03, 2016-Ohio-8244, ¶ 20, 23-26 (probate court "must consider the best interest of the child"; earlier mediation report that mother and father had agreed to name change not dispositive

but was one factor among many examined). Mr. M.S. cites us to no pertinent authority to the contrary, and his reliance on cases involving settlements of wrongful death actions, patent assignor royalties, and other matters not involving the direct interests of third-party minors made the object of contract only underscores his lack of precedents to establish that the trial court abused its discretion here. *Compare* Appellant's Brief at 20-23.

{¶ 22} Indeed, Mr. M.S. seems at times to concede that "the trial court must consider the best interests of the child." *See id.* at 14 (then acknowledging *Willhite* factors). But the only evidence to which he points on appeal in support of his argument that the trial court abused its discretion in examining the *Willhite* factors and opting for the hyphenated surname alternative he had proposed is the short-lived name change agreement, involving cash, that he and Dr. A.F. reached before their final parting of the ways. *See id.* at 45-48 (attempting to argue that the trial court's determination regarding the child's best interest was against the manifest weight of the evidence, but not engaging in analysis of *Willhite* factors).

{¶ 23} Mr. M.S.'s suggestion that the trial court did not "consider" Dr. A.F.'s fleeting position on changing the boy's last name to "S." alone is simply wrong. *See*, *e.g.*, Magistrate's Decision at 3 (describing agreement during "brief period when [Dr. A.F.] and Mr. [M.S.] had reconciled"), *id.* at 3-4; 6 (considering Mr. M.S.'s "contract" argument, while noting that "children are not chattel" and then reviewing *Willhite* factors; Judgment Entry at 3 (reciting Mr. M.S.'s argument after noting court's obligation to review *Willhite* factor), *id.* at 4 (observing that "past agreements between the minor's parents regarding the appropriateness of a proposed name change do not abrogate the affirmative duty of the applicant to establish that the name change is presently in the minor's best interests," citing *D.W.* and *Willhite*), *id.* at 5 (further assessing Mr. M.S.'s argument); *compare* Appellant's Brief at 47 (acknowledging that "[a]t trial, the probate court found that the parties [for a period in 2019 had] agreed to change the child's surname to [S.] * * *").

{¶ 24} Mr. M.S.'s related argument that the trial court failed to accord "special weight to the parents' assessment," *see* first assignment of error, ignores or would relegate to absolute insignificance the saliant fact that Dr. A.F. *opposed* Mr. M.S.'s application (and retained counsel to fight it in the trial court). Mr. M.S. offers no authority to support any proposition that the trial court applied the wrong timeframe in considering the application

as submitted by Mr. M.S. (alone and without support from Dr. A.F.) in November 2019 in light of the testimony provided August 26, 2020. As we have outlined above, it would have been error for the trial court *not* to consider the child's best interest at the point it made its decision on the basis of the testimony before it. Mr. M.S. concedes that this is not a case like *In re H.C.W.*, 12th Dist. No. CA2018-07-069, 2019-Ohio-757, where both parents *supported* the name change application, *see* Appellant's Brief at 17; *H.C.W.* at ¶ 2 ("application was accompanied by consents from both Mother and Father"); his concern here is not that the trial court disregarded Dr. A.F.'s position on the name change (although it did grant Mr. M.S.'s alternative request to add his last name as part of a hyphenated surname), but that the trial court took the mother's views on the child's best interest into account (to the extent of not excising her surname entirely from the child's). Mr. M.S.'s reliance on *H.C.W.* further undermines his position by pointing us again to the best interest of the child (a standard that "necessarily involves a broader inquiry than that applicable to an adult name change"). *See id.* at ¶ 19; *see also id.* at ¶ 21-22 (outlining multiple factors, overlapping with *Willhite* factors, that court there used to assess best interest in context not of "family/parental identification issues * * * implicated by a name change," but of "a name change to promote the child's gender identity").

{¶ 25} Significantly, in attempting his (already uphill) argument that the trial court abused its discretion in ordering his proposed alternative (hyphenated) surname change, Mr. M.S. does not contest the trial court's other findings or the particulars of its *Willhite* analysis beyond reference to the early 2019 bargain. *See* Appellant's Brief at 45-48. Mr. M.S. contends that the trial court's "decision was against the manifest weight of the evidence," but he does not even try to assess each of the *Willhite* factors to show that the child should have been stripped entirely of Dr. A.F.'s last name. *Id.* He did not establish at the trial court that eliminating "F." from C.'s last name was in C.'s best interest. *Compare D.W.* at ¶ 10 ("When there is insufficient evidence as a matter of law that a name change is in the best interest of the child, a trial court's judgment changing a child's surname must be reversed").

{¶ 26} The trial court did not abuse its discretion in finding that a review of the *Willhite* factors did not favor eliminating the mother's surname from the child's when adding the father's. Because Mr. M.S. presents us with no real argument as to most of the

factors, our summary will be brief. *See, e.g.*, *In re C.C.M.*, 10th Dist. No. 12AP-90, 2012-Ohio-5037, ¶ 31 (trial court did not abuse its discretion where *Willhite* factors supported its decision). We find no abuse of discretion in the magistrate's conclusion as adopted by the trial court that the factors weigh in favor of the hyphenated last name (and that Mr. M.S. did not establish that replacing "F." with "S." alone would be in the child's best interest). That is, the trial court did not abuse its discretion in considering:

a. the preservation and development of C.'s relationship with "each parent" (here, the order provides for the surname of each parent to be included in the hyphenated last name; *see also* Magistrate's Decision at 6 ("[C.] recognizes Dr. [A.F.] and Mr. [M.S.] as his parents."));

b. C.'s identification as part of one "family unit" (ditto, with C.'s surname not severed from relatives on either side of his family, *see* Magistrate's Decision at 6; Tr. at 125 [Mr. M.S. testifies that hyphenated surname would not cause C. to lose identification as part of the S. family unit]);

c. the "length of time" C. has used the "F." surname ("his entire life," Magistrate's Decision at 6; *see also* Tr. at 50 [Mr. M.S. acknowledges that C. "knows the name [C.L.F.]"]; Tr. at 269 [Dr. A.F. testifies that C. plays at being "Dr. [C.F.]" on toy telephone]);

d. that C. was not yet three years old at the time of the hearing, and had not yet turned four at the time of the trial court's judgment (*see* Magistrate's Decision at 2);

e. that with the hyphenated surname, C.'s name would contain the surname of each "residential parent" (*see* Judgment Entry at 5, noting that "both parents" are designated as "residential parents," with Mr. M.S. being the residential parent "for school placement purposes");

f. that a hyphenated surname, combining the last names of both of C.'s parents, " 'may *aid* in avoiding confusion and embarrassment' rather than causing it: 'The child with a combined surname does not have to explain why his or her last name is different,' " (Judgment Entry at 6, quoting *Willhite* at 33 with emphasis added);

g. that "[n]either parent has failed to maintain contact or support with [C.]," with both parents operating under a shared

parenting agreement by which C. lives with each parent for an equal amount of time (Magistrate's Decision at 6, 3); and

h. that a child's name is not " 'a piece of property to be bargained over,' " Judgment Entry at 5, quoting *Willhite* at 31, and that "[a]t hearing, Mr. [M.S.'s] counsel confirmed that Mr. [M.S.] was not withdrawing his alternative [hyphenated surname] request," Judgment Entry at 6.

**{¶ 27}** As to the last point, we note that Mr. M.S. never explains why the early-2019 bargain, made before the final break-up, should carry more weight in the analysis than his own "alternative" request in his application to the trial court to adopt the hyphenated surname for C. that he now opposes. *Compare* Tr. at 292 (Mr. M.S.'s counsel divulges that "I've told him, hyphenation is 99, 98 percent of the cases"); *id.* at 294 (urging "at the very least" that the court "put[] his name first, * * * * [S.] first, if you're going to hyphenate, [F.] second").

**{¶ 28}** With regard to the *Willhite* factors more globally, we have remarked before that: "[T]he Supreme Court of Ohio has expressed a preference for a hyphenated surname for a child of divorced or unmarried parents who is not old enough to have established an existing surname as part of his or her identity." *Bond*, 2016-Ohio-3342, at ¶ 20, citing *Knauer v. Keener*, 143 Ohio App.3d 789, 793 (2d Dist.2001) (interpreting *Willhite*). In *Bond*, we reiterated that, "[a]s the Supreme Court has stated, a hyphenated surname helps a child identify with both parents." *Id.*, citing *Willhite* at 33. "Additionally, 'a combined surname gives the child a greater sense of security. * * * [Further], [t]he child with a combined surname does not have to explain why his or her last name is different [from his father's or mother's surname]. A combined surname is a solution that recognizes each parent's legitimate claims and threatens neither parent's rights. The name merely represents the truth that both parents created the child and that both parents have responsibility for that child.' " *Id.*, quoting *Willhite* at 33; *see also, e.g.*, *Perez*, 2004-Ohio-5068, ¶ 15 (" ' "A dual name would help the child identify with both parents, a state of mind that child psychologists say is essential to the child's adjustment" ' " to parental split) (quoting *Willhite* at 33, further citation omitted).

**{¶ 29}** Having reviewed the record in its entirety, we find that the trial court did not abuse its discretion in finding that Mr. M.S.'s alternative, hyphenated surname proposal

for C. was in the child's best interest.  We overrule Mr. M.S.'s first, second, and fifth assignments of error.

{¶ 30} Mr. M.S.'s third and fourth assignments of error submit that the trial court abused its discretion in not admitting two exhibits (exhibit 7 and exhibit 40) that had been offered by Mr. M.S. at the hearing.  Mr. M.S. did not raise the exclusion of these exhibits in his objections to the Magistrate's Decision, *see* Applicant-Father's Objections to the Magistrate's Decision, and consequently the trial court did not rule on those items in considering the objections that were made.  *See* Civil Rule 53(D)(4)(d) ("If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections").  A trial court does not err in failing to review a magistrate's evidentiary rulings not identified in any objections to a magistrate's decision or apparent from the face of that decision.  *Compare* Civil Rule 53(D)(3)(b)(iv) and (4)(c); *Hunter v. Rainer*, 5th Dist. No. 03CAF08040, 2004-Ohio-1746, ¶ 17 ("These evidentiary issues were never raised in the objections to the trial court [and] therefore, they were not preserved for appeal"); *Carver v. Halley*, 2d Dist. No. 06CA54, 2007-Ohio-2351, ¶ 15 (Civ.R. 53(D)(3)(b)(iv) "requires [that evidentiary objection be made to trial court] in order to preserve the issue for appeal").

{¶ 31} But even if we were to examine these evidentiary rulings by the magistrate for plain error, *compare, e.g., Keefe v. Doornweerd*, 9th Dist. No. 26377, 2012-Ohio-5654, ¶ 31-32 (appellant waived all but plain error by failing to object in the trial court to the magistrate's exclusion of witnesses), or even under the abuse of discretion standard that generally governs preserved evidentiary objections, *see, e.g., State v. Wilkins*, 10th Dist. No. 18AP-797, 2020-Ohio-3428, ¶ 24 (" ' "trial court has broad discretion concerning the admission or exclusion of evidence," ' " and "appellate court will generally not second guess a trial court's determination on the admission or exclusion of evidence in the absence of an abuse of discretion") (citations omitted), the result would be the same.

{¶ 32} Even if otherwise admissible, exhibit 7 (a March 20, 2019 e-mail from Dr. A.F. to her lawyer referencing the name bargain, *see* Tr. at 245-47, 280-82) and exhibit 40 (March 2019 text messages reflecting that Dr. A.F. had e-mailed her lawyer before depositing the $10,000 check, *see* Tr. at 47-48) were simply cumulative of testimony and other exhibits reflecting the March 25, 2019 bargain of the then-reconciled couple.  As the magistrate noted, for example, the import of exhibit 7 was conveyed by (admitted) exhibit

8, the proposed name-change agreement as signed by both parents and proffered to and rejected for want of jurisdiction by the domestic relations court. *See* Tr. at 282 (magistrate notes that proposed exhibit 7 contains nothing of substance "that isn't also covered by the agreed name change entry that the parties signed"). Similarly, the proffered language from exhibit 40 ("E-mailed my lawyer before depositing the check, trust") would add nothing of substance to the testimony of record. *See* Tr. at 47. As Mr. M.S. concedes, Dr. A.F. "testified that she agreed to and received the $10,000 check from [Mr. M.S.]," Appellant's Brief at 44-45, and the proffered exhibit again adds nothing of substance to that testimony. The record reflects that the magistrate and the trial court understood full well what transpired in March 2019 as they appraised the best interest of the child in 2020 and 2021.

{¶ 33} Admission of exhibits 7 and 40 would not in any way have altered the analysis of the magistrate and the trial court as dictated by Ohio statute and Supreme Court precedent (even had Mr. M.S. attached enough significance to those proposed exhibits to include their treatment in his objections to the trial court). They would not affect our conclusion as set forth above that the trial court did not abuse its discretion in deciding to adopt Mr. M.S.'s alternative request to add his surname as part of C.L.S.-F.'s hyphenated last name and not strip the child entirely of the surname he has carried from his mother since birth. We overrule Mr. M.S.'s third and fourth assignments of error.

{¶ 34} Having overruled all five of Mr. M.S.'s assignments of error, we affirm the judgment of the Franklin County Probate Court changing the name of C.L.F. to C.L.S.-F.

*Judgment affirmed.*

SADLER, and JAMISON, JJ., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

_____