[Cite as *Gray v. King*, 2013-Ohio-3085.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| WILLIAM K. GRAY, | : | CASE NO. CA2013-01-006 |
| Plaintiff-Appellant, | : | |
| | : | O P I N I O N<br>7/15/2013 |
| - vs - | : | |
| | : | |
| KELSEY KING, | : | |
| Defendant-Appellee. | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2012 JG 19450

Jacqueline M. Handorf-Rugani, 5740 Gateway Boulevard, Suite 202, Mason, Ohio 45040, for plaintiff-appellant

Faris & Faris, LLC, Jessica D. Faris, 40 South Third Street, Batavia, Ohio 45103, for defendant-appellee

**M. POWELL, J.**

{¶ 1} Plaintiff-appellant, William Gray (Father), appeals a decision of the Clermont County Court of Common Pleas, Juvenile Division, granting him parenting time with his daughter and denying his motion to change his daughter's surname.

{¶ 2} The child was born on January 7, 2012, as a result of a brief affair between defendant-appellee, Kelsey King (Mother), and Father. The parties did not have a relationship during the pregnancy and seldom communicated. Mother did not inform Father

she was at the hospital delivering; Father found out on his own. Father was able to visit the child at the hospital for an hour or two. Father is listed as the child's father on the birth certificate but the child bears Mother's surname. The parties' communication has not improved since their daughter's birth.

{¶ 3} Mother lives with her mother and stepfather in their home. She has been the child's primary caregiver. Shortly after the child's birth, Mother allowed Father to visit the child twice a week and every other Saturday, two hours per visit. Father visited the child two or three times. By decision filed on March 8, 2012, the magistrate ordered Father to pay child support and granted him parenting time as follows: "every Tuesday and Thursday from 6:00 PM until 8:00 PM and every weekend alternating between Saturday and Sunday. The first two weekend visits will be from noon until 2:00 PM and then noon until 4:00 PM thereafter." The magistrate noted that the parenting time and child support orders were temporary in nature.

{¶ 4} In August 2012, Father filed his proposed shared parenting plan. Father sought to have the child from Tuesday at 6:00 p.m. until Thursday at 6:00 p.m. one week, and from Sunday at 6:00 p.m. until Tuesday at 6:00 p.m. and then again from Thursday at 6:00 p.m. until Sunday at 6:00 p.m. the following week, to be implemented on a weekly rotating basis. Father also sought to change the child's surname to his surname.

{¶ 5} A hearing was held before the magistrate on September 17, 2012. Both parties testified. On September 25, 2012, the magistrate designated Mother as the child's residential parent, denied Father's request to change his daughter's surname, found that shared parenting was neither practical nor in the best interest of the child, and granted parenting time to Father under a transitional schedule that gradually increases over two years.

{¶ 6} Specifically, from September 2012 to January 7, 2015, Father was granted parenting time every Tuesday and Thursday from 6:00 p.m. to 8:00 p.m. With regard to

weekend visitation, Father was granted parenting time on Saturday one week and on Sunday the following week, from noon until 4:00 p.m. until January 7, 2013, and from 10:00 a.m. to 6:00 p.m. between January 8, 2013, and January 7, 2014. Thereafter, between January 8, 2014, and January 7, 2015, Father was granted parenting time from 10:00 a.m. on Saturday until 10:00 a.m. on Sunday, every weekend. Finally, beginning January 8, 2015, Father was granted standard parenting time pursuant to the Clermont County Parenting Guidelines. At that time, the child will be three years old.

{¶ 7} Father filed objections to the magistrate's decision. Following a hearing on the objections in December 2012, the juvenile court overruled the objections and affirmed the magistrate's decision on December 24, 2012.

{¶ 8} Father appeals, raising three assignments of error.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED WHEN IT ORDERED A LONG-TERM STEP-UP PLAN OF PARENTING TIME TO FATHER THAT IS LESS THAN THE COURT'S OWN GUIDELINE ORDER OF PARENTING FOR THE NON-RESIDENTIAL PARENT.

{¶ 11} Father argues the juvenile court erred in granting him less than standard parenting time, especially in light of the mandate in Clermont County Juv.R. 23.1 that "the Court shall adopt its Standard Parenting Time Guidelines as the Order of the Court." Father asserts that the magistrate's decision relied on several erroneous findings of fact which, in turn, were outcome determinative, and that it is not in the best interest of the child to limit his weekday parenting time to four hours.[1]

{¶ 12} A juvenile court is vested with broad discretion in determining the visitation

---

1. For example, the magistrate found that Father lived with his girlfriend and her two children, and that Father told Mother he will not put the child down for a nap during his parenting time because his parenting time is already limited. There is no evidence in the record as to whether Father's girlfriend has children. Father denied making the statement regarding naps to Mother. Father testified he would prefer his daughter not sleep during his weekday parenting time; however, he does not hinder her sleep schedule and the child naps when she needs to.

rights of a nonresidential parent. *Otten v. Tuttle*, 12th Dist. No. CA2008-05-053, 2009-Ohio-3158, ¶ 13. Accordingly, while a juvenile court's visitation orders must be reasonable and consistent with the best interest of the child, an appellate court must review a juvenile court's decision concerning visitation with deference, and will reverse only if the court abused its discretion. *Id.* An abuse of discretion connotes more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 13} While Clermont County Juv.R. 23.1 does requires the juvenile court to adopt the standard parenting time guidelines, the rule also states that the standard guidelines should not be adopted if the "facts of a case warrant a deviation pursuant to Ohio Revised Code § 3109.051(D)." The Clermont County Parenting Guidelines, in turn, state in relevant part:

> Children need the continuing and regular involvement of both parents to feel loved. No specific schedule will satisfy the change in needs of both children and parents over the years. Critical to the success of any schedule is that each parent be flexible, based upon the changing needs of a child as the child grows older. The different Weekly Schedules below [standard and phase-in] take into account the different needs of children and their families. It is recognized that each situation and each child is different. It is preferred that parents tailor the parenting schedule to meet the specific needs of the child.
>
> In all cases, the Court will strive to adopt a parenting schedule that is in the child(ren)'s best interests. The factors contained in [R.C.] 3109.051(D) shall be considered in any proposed deviation from the guideline parenting schedule. Absent a request for deviation and evidence in support thereof, the Court will impose the guidelines set forth below.
>
> * * *
>
> Phase-In Schedule – Where the child(ren) may not be sufficiently familiar with Father to immediately warrant one of the [standard] parenting time schedules * * *, the Court may consider, subject to the child(ren)'s best interests, * * * phase-in parenting time guidelines before initiating one of the parenting time schedules set forth above.

{¶ 14} R.C. 3109.051(D) lists several factors to consider when granting parenting time, including, as applicable here, the child's interaction with parents and siblings, the geographical distance between parents, the child's and parents' available time to spend together, the age of the child, the child's adjustment to home, the health and safety of the child, the mental and physical health of all parties, the wishes of the parents, each parent's willingness to reschedule missed parenting time, whether the residential parent has denied the other parent's rights to parenting time, and any other factor in the best interest of the child. R.C. 3109.051(D)(1)-(16). When determining parenting time, a juvenile court need not specifically refer to R.C. 3109.051(D), but the court's findings or the record should indicate that the court considered the statute and its factors when it rendered its decision. *See Mackowiak v. Mackowiak*, 12th Dist. No. CA2010-04-009, 2011-Ohio-3013, ¶ 105. In his decision, the magistrate specifically stated he considered the factors of R.C. 3109.051 (and 3109.04).

{¶ 15} At the time of the September 2012 hearing before the magistrate, the child was eight months old, was nursing several times a day, including at night, and had started taking solid baby food. Mother testified she intended to breastfeed the child until age two. Testimony revealed that the child is on a "very fixed schedule" and that she does very well on that schedule. The parties live 15 minutes from one another. Although Father had moved into his house in the spring, Mother did not learn about Father's current living arrangements until the day of the hearing. Both parties have a loving, close relationship with the child.

{¶ 16} The parties have a contentious relationship. Mother testified that because Father is "very hostile, aggressive" and "very mean" toward her, she has blocked her cellphone number. As a result, Father cannot call or text her and must communicate with her via emails or her stepfather. Testimony revealed that Mother will not agree to give Father all of the time he wants with the child. Father has also at times increased his parenting time that

he feels he is entitled to, whether Mother agrees or not.

{¶ 17} Father testified he was seeking shared parenting because the child is very comfortable with him, he wants to be involved in the child's life and maximize time spent with her, and wants "a fair shot at seeing her." Father is a self-employed contractor who is "at the mercy" of his customers at times, which has occasionally interfered with his parenting time. Father testified that if he had to work on the days he would have custody of the child pursuant to his shared parenting plan, he would use Mother as a care provider. Father testified he has never cared for a child for more than six hours and has never gotten up in the middle of the night to care for a child.

{¶ 18} Mother testified she is opposed to shared parenting and overnight visitation because the child was only eight months old, was still nursing, and was "just too young." Mother stated she wanted a transitional parenting time schedule and a schedule that was "more age-appropriate." Mother testified she wants Father to have more parenting time as the child gets older.

{¶ 19} After a thorough review of the record, and in light of the foregoing, we find the juvenile court did not abuse its discretion in granting Father a phased-in parenting time schedule to transition to a standard parenting time schedule over two years. Father's first assignment of error is overruled.

{¶ 20} Assignment of Error No. 2:

{¶ 21} THE TRIAL COURT ERRED WHEN IT REFUSED TO LOOK AT NEW EVIDENCE.

{¶ 22} Father argues the juvenile court erred when it refused to consider additional evidence that was attached to his objections to the magistrate's decision. The evidence consisted of medical records of the child (including the medical record of a doctor's visit that occurred after the September 2012 hearing before the magistrate) and an undated online

query posted by Mother.

{¶ 23} Pursuant to Civ.R. 53(D)(4)(d),

> If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. * * * Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.

{¶ 24} Civ.R. 53(D)(4)(d) allows but does not require a trial court to accept additional evidence when ruling on objections to a magistrate's decision. Here, there is no evidence that Father could not, with reasonable diligence, have presented the medical records and the online query for the magistrate's consideration. Through discovery, Father could have realized that Mother intended to, or was likely to present evidence regarding the child's daily schedule and challenge whether Father went to all of the child's doctor's visits, and thus, Father could have prepared his case accordingly. The juvenile court, therefore, did not abuse its discretion in refusing to consider additional evidence Father provided after the magistrate issued its decision. *See Losey v. Diersing*, 12th Dist. No. CA2012-06-048, 2013-Ohio-1108.

{¶ 25} Father's second assignment of error is overruled.

{¶ 26} Assignment of Error No. 3:

{¶ 27} THE TRIAL COURT ERRED WHEN IT DENIED FATHER'S MOTION TO CHANGE THE MINOR CHILD'S NAME TO FATHER'S SURNAME.

{¶ 28} Father argues the juvenile court erred when it denied his motion to change his daughter's surname. We note that during the September 2012 hearing, Father testified he wanted to change his daughter's surname to his surname because it is "tradition," "it reduces the risk of abnormalities growing up," it would be "abnormal" for his daughter not to have his last name, and it could create confusion later in her life, especially since Father did not know if Mother would always keep her surname. Subsequently, in his objections to the

magistrate's decision and, apparently, during the December 2012 hearing on his objections, Father asked that his daughter's surname be changed to King-Gray.

{¶ 29} Pursuant to R.C. 3111.13(C), "a court of common pleas may determine the surname by which the child shall be known after establishment of the existence of the parent and child relationship, and a showing that the name determination is in the best interest of the child." *Bobo v. Jewell*, 38 Ohio St.3d 330 (1988), paragraph one of the syllabus.

{¶ 30} In determining whether a change of surname is in the child's best interest, the court should consider the following factors:

> the effect of the change on the preservation and development of the child's relationship with each parent; the identification of the child as part of a family unit; the length of time that the child has used a surname; the preference of the child if the child is of sufficient maturity to express a meaningful preference; whether the child's surname is different from the surname of the child's residential parent; the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; parental failure to maintain contact with and support of the child; and any other factor relevant to the child's best interest.

*In re Willhite*, 85 Ohio St.3d 28 (1999), paragraph two of the syllabus.

{¶ 31} The determination of what is in the best interest of the child is within the sound discretion of the juvenile court. *In re Dayton*, 155 Ohio App.3d 407, 2003-Ohio-6397, ¶ 9 (7th Dist.). This court, therefore, is not free to substitute its judgment for that of the juvenile court when reviewing its decision regarding a child's surname. *D.W. v. T.L.*, 134 Ohio St.3d 515, 2012-Ohio-5743, ¶ 10; *In re C.L.T.*, 12th Dist. No. CA2011-04-073, 2012-Ohio-427, ¶ 31.

{¶ 32} "[A] parent who seeks to alter the status quo by changing the child's surname bears the burden of presenting sufficient evidence to affirmatively demonstrate that the change is in the child's best interest." *D.W.* at ¶ 17. The outdated tradition of granting the paternal surname to a child in unmarried-parent situations is not to be considered as a factor. *Id.* at ¶ 14, 16. Additionally, a preference that a child bear the father's surname as a reward

for paying child support is improper. *Id.* at ¶ 16. Further, the "generic consideration - that a woman is more likely to change her surname if she should marry - cannot be a valid factor supporting a name change[.]" *Id.* at ¶ 21.

{¶ 33} After a thorough review of the record, we find no abuse of discretion in the juvenile court's decision denying Father's motion to change his daughter's surname. The only evidence in support of the name change was Father's testimony that it was tradition, it would be "abnormal" for his daughter not to have his last name, and it could create confusion later in her life, especially since Father did not know if Mother would always keep her surname. While we recognize Father's interest in having his daughter carry his surname, because this was the only evidence presented in support of the name change at the September 2012 hearing, Father did not meet his burden of establishing that a name change was in his daughter's best interest. *In re C.L.T.*, 2012-Ohio-427 at ¶ 32.

{¶ 34} The Ohio Supreme Court has recognized that a combined surname, with both parents' surnames hyphenated, "recognizes each parent's legitimate claims and threatens neither parent's rights. The name merely represents the truth that both parent created the child and that both parents have responsibilities." *In re Willhite*, 85 Ohio St.3d at 33. Here, however, the option of a combined surname for the child was never before the magistrate as Father "offered [such] compromise" for the first time in his objections to the magistrate's decision. Further, while Father's reply brief indicates the combined surname was also discussed during the December 2012 hearing on Father's objections, he failed to provide this court with a transcript of the proceedings or an acceptable alternative, as required by App. R. 9. As a result, we have no choice but to presume the validity of the juvenile court's proceedings. *Thompson v. Valentine*, 12th Dist. No. CA2009-09-231, 2010-Ohio-4075, ¶ 14, 16. *See also Wilhoite v. Kast*, 12th Dist. No. CA2001-01-001, 2002 WL 4524 (Dec. 31, 2001) (a meaningful review of a trial court's decision must be based on the record before us, not

mere conclusory assertions in an appellate brief).

{¶ 35} Father's third assignment of error is overruled.

{¶ 36} Judgment affirmed.


HENDRICKSON, P.J., and S. POWELL, J., concur.