[Cite as *In re Change of Name of L.T.L.*, 2022-Ohio-1204.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| CHANGE OF NAME OF L.T.L. | : | CASE NO. CA2021-08-104 |
| | : | O P I N I O N<br>4/11/2022 |
| | : | |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. PI19-10-0263

K.L., pro se.

Robert M. Dumes, for appellee.

**HENDRICKSON, J.**

{¶1} Appellant, K.L. ("Mother"), appeals a decision of the Butler County Court of Common Pleas, Probate Division, granting the application of appellee, S.J. ("Father"), to change the surname of their minor son.

{¶2} The parties' son was born out of wedlock in January 2016. At the time of the son's birth, Mother and Father were no longer in a relationship together. Father questioned

the paternity of the child, as he and a prior partner had been unable to conceive a child for more than a decade. Though he had no medical basis for his belief, Father thought he was sterile.

{¶3} Father did not provide emotional or financial support to Mother during her pregnancy. Father was not present when the child was born but arrived at the hospital later that day. Father brought along a DNA test kit and took a sample from the child to test his paternity. A few weeks later, the genetic test results established Father's paternity of the child.

{¶4} Regarding the name given to the parties' son, Mother and Father had discussed the child's first name prior to the child's birth and reached an agreement. With respect to the child's surname, Mother believed that a few discussions occurred, but no agreement was reached. Father assumed the child would receive his last name, but admitted he and Mother "really didn't discuss that." Mother ultimately gave the child her surname.

{¶5} At some point in 2016, when the parties' son was between three and six months old, the parties discussed changing the child's surname to Father's surname. Together, the parties went to the local health department and to the probate court to obtain information and necessary paperwork. Mother claimed she went only for informational purposes, as she had not made the decision to change her son's surname. Father contends that Mother had agreed to change the surname, but later changed her mind.

{¶6} Father sought to establish parental rights and responsibilities by filing an action in Juvenile Court. Pursuant to a juvenile court order, Mother was named residential parent of the child. However, the court order gave the parents equal, or 50/50, parenting time. Father started paying child support approximately four or five months after the child's birth and he has remained current on his obligation.

{¶7}   On October 23, 2019, Father filed an application with the probate court to change the child's surname from Mother's to his own. Mother contested the name change, and a hearing was held before the magistrate on January 6, 2010. Mother and Father were the only witnesses to testify at the hearing.

{¶8}   Father testified that he believed it was in the child's best interest to have his surname because both his family and Mother's family have a history of giving the children born into their respective families the father's last name. He stated, "[I]t's in [the child's] best interest to carry his father's last name like my father, like my grandfather, like [Mother's] father, grandfather, like we all have done." He further stated it was "important" for his son's surname to be the same as his surname as "when I pass on, I want to pass on my stuff to him. I want to - - all my - - all my stuff to be passed to him, and I want his name to be the same as mine like my father and me."

{¶9}   Father noted that his son spends a considerable amount of time with Father's family, including the child's paternal grandparents, his aunts and uncles, and his cousins. Father explained that the child has 13 cousins who he plays with who have Father's surname. Father's family, friends, and coworkers all assume the child's last name is the same as father's last name and they call the child "Little [Father's surname]." Father also testified that he has heard his son use Father's surname when asked his name. Father has never heard the child use Mother's surname when asked his name.

{¶10}   Mother testified that she believed it was in her son's best interest to retain her surname until he was old enough to make the decision for himself as to whether he wanted Father's surname to be his surname. She stated, "[Father] and I [were] not married, and in the State of Ohio, I'm allowed to make that decision when you are an unmarried couple, and I chose at that time to let [the child] have my last name, and I feel like when [the child] wants to make that decision on his own, he can do so." She further explained that because

she was the residential parent and the child lived in her home, it was important to her that he have the same last name as her. On cross-examination Mother admitted she is engaged to be married and is unsure of whether she will take her fiancé's last name after the wedding. She stated that it was possible that she would hyphenate her surname and her fiancé's surname.

{¶11} Mother explained that the parties' child was only four years old as of the date of the hearing and that because of his young age, he did not really know what his surname was or that his surname differed from Father's surname. Mother testified her surname is exclusively used at the child's doctors' appointments and at his preschool.

{¶12} Mother testified that the child's maternal grandparents reside in Florida. Mother's sister lives locally with her three children. Mother's sister's three children have the same last name as their father. Sister's oldest child had sister's surname until the child turned 13 years of age, at which point the child's surname was changed to that of his father's upon the child's request. Mother envisioned that something like this could occur in the future with respect to her own child, where her son asks to have his name changed to Father's surname. Unless or until that occurs, however, Mother believes the child's surname should remain her own surname.

{¶13} After hearing the foregoing, the magistrate issued a decision denying Father's application to change the child's maternal surname to Father's surname. Father objected to the magistrate's decision, arguing the decision was against the manifest weight of the evidence. The trial court sustained Father's objection after considering "all the testimony in light of the multifactoral test of *In re Willhite*, 85 Oho St.3d 28 (1999)." The court found the name change was in the child's best interest after noting the "unrebutted evidence that the child has begun to use [Father's] surname * * * and that he does not use the surname [of Mother]. * * * Simply put, the Court finds that the surname the child calls himself, or answers

to, to be relevant, and the only testimony in the record is that [Father's surname] is that surname. The court finds [Father's] testimony to be credible in that regard." The court further stated that

> "the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's" is a factor that favors adoption of [Father's] surname * * *. Although [Mother] has legal custody of the child, the actual parenting time split is approximately equal between her and [Father]. The Court finds that the testimony was unrebutted that the child is frequently in the company of paternal family and friends who believe his surname to be [Father's surname], and call him "Little [Father's surname]." The Court finds that continuing to use the [Mother's] surname * * * is likely to create embarrassing or awkward situations for the child in the future.

{¶14} Mother appealed the probate court's decision, raising the following as her sole assignment of error:

{¶15} THE PROBATE COURT DID NOT COMPLY WITH SIX FACTORS WHEN DETERMINING A NAME CHANGE.

{¶16} Mother contends the trial court failed to give due consideration to all the *Willhite* factors in reaching its determination that the name change was in the child's best interest. Specifically, Mother argues that the trial court should have afforded more weight to the length of time the child had used Mother's surname and the importance of allowing the child to retain the same name as the residential parent. She further contends that the trial court's finding that the child's continued use of Mother's surname was "likely to create embarrassing or awkward situations for the child in the future" was speculative.

{¶17} At the time Father petitioned for a name change for his son, former R.C. 2717.01 governed name changes for minors. Pursuant to former R.C. 2717.01(B), "[a]n application for change of name may be made on behalf of a minor by either of the minor's parents * * *." "[T]he standard for deciding whether to permit a name change is 'proof that

* * * the facts set forth in the application show reasonable and proper cause for changing the name of the applicant.'" *In re Willhite*, 85 Ohio St.3d at 30, quoting former R.C. 2717.01(A). In determining whether reasonable and proper cause has been established, the court must consider whether the requested name change is in the child's best interest. *Id.* at 32; *In re Change of Name of M.W.R.*, 12th Dist. Butler Nos. CA2007-04-105 and CA2007-04-106, 2007-Ohio-6169, ¶ 7.

{¶18} The trial court should consider the following factors in determining whether a change of the minor's surname is in the child's best interest: (1) the effect of the change on the preservation and development of the child's relationship with each parent; (2) the identification of the child as part of a family unit; (3) the length of time that the child has used a surname; (4) the preference of the child if the child is of sufficient maturity to express a meaningful preference; (5) whether the child's surname is different from the surname of the child's residential parent; (6) the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; (7) parental failure to maintain contact with and support of the child; and (8) any other factor relevant to the child's best interest." *In re Willhite* at 32.

{¶19} "When reviewing a trial court's decision determining that a child's name either should or should not be changed, a reviewing court may not substitute its own judgment for that of the trial court, but it must consider whether the trial court abused its discretion." *D.W. v. T.L.*, 134 Ohio St.3d 515, 2012-Ohio-5743, ¶ 10. "When there is insufficient evidence as a matter of law that a name change is in the best interest of the child, a trial court's judgment changing a child's surname must be reversed." *Id.*

{¶20} "[A] parent * * * who seeks to alter the status quo by changing the child's surname bears the burden of presenting sufficient evidence to affirmatively demonstrate that the change is in the child's best interest." *Id.* at ¶ 17. "The outdated tradition of granting

the paternal surname to a child in unmarried-parent situations is not to be considered as a factor." *Gray v. King,* 12th Dist. Clermont No. CA2013-01-006, 2013-Ohio-3085, ¶ 32, citing *D.W.* at ¶ 14, 16. "Additionally, a preference that a child bear the father's surname as a reward for paying child support is improper." *Id.,* citing *D.W.* at ¶ 16. Finally, the "generic consideration – that a woman is more likely to change her surname if she should marry – cannot be a valid factor supporting a name change[.]" *D.W.* at ¶ 21.

**{¶21}** With these considerations in mind, and after thoroughly reviewing the record, we find no abuse of discretion in the probate court's decision to grant Father's application to change his son's surname. In finding the name change was in the child's best interest, the court considered all relevant *Willhite* factors. At the time of the name-change hearing, the child was four years old and Mother testified that the child did not know what his surname was.[1] Though Mother was the residential parent, Mother and Father had equal parenting time and the child was part of each parent's family unit. Both parents maintained contact and support with the child. The child spent a considerable amount of time with his paternal relatives, including his 13 cousins who share Father's surname. The child's paternal family and Father's friends and coworkers referred to the child as "Little [Father's surname]," to which the child responded. As the trial court noted, "there was unrebutted evidence that the child has begun to use the [Father's] surname * * * and that he does not use the [Mother's] surname." Father testified that when the child is asked his name, the child uses Father's surname as his last name, rather than using Mother's surname to identify

---

1. In her appellate brief, Mother alleges that the child "has held [Mother's] last name * * * for almost six years. The minor child knows his surname [is Mother's surname]. The minor child was learning to write [Mother's surname] in preschool." This court cannot consider information that was not before the trial court. We are limited to the record on appeal. At the time the name-change application was heard, the child was four years old and there was no evidence presented that the child was learning to write his maternal surname. Rather, when asked about whether the child knew his full name, Mother responded, "He knows his first name, but I don't think not yet. He needs to, he's going to be in kindergarten next year." She further stated that the child did not have any idea that her last name was different than Father's last name.

himself.[2]  As the child identifies Father's surname as his surname, the trial court's finding that "continuing to use the [Mother's] surname * * * is likely to create embarrassing or awkward situations for the child in the future" is supported by the record.

**{¶22}**  Accordingly, given the record before us, we find the trial court did not abuse its discretion in granting Father's application to change the child's surname to Father's surname after consideration of all relevant *Willhite* factors.  There was sufficient evidence as a matter of law that a name change was in the child's best interest.  Mother's sole assignment of error is overruled.

**{¶23}**  Judgment affirmed.

PIPER, P.J., and S. POWELL, J., concur.

---

2. The trial court found Father's testimony regarding the child's use of Father's surname to be admissible under Evid.R. 801.  Mother does not challenge this finding on appeal.